IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABIGAIL CEMBER** : | **CIVIL ACTION NO.** |
| : | 2:24-cv-06913 |
| **Plaintiff,** : | |
| : | |
| v. : | **JURY TRIAL DEMANDED** |
| : | |
| **UNIVERSITY OF PENNSYLVANIA** : | |
| : | |
| **Defendant.** : | |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiff, Abigail Cember ("Plaintiff"), brings this action against her former employer, University of Pennsylvania ("Defendant"), alleging that Defendant discriminated against her due to her disability, and that its actions were in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951 *et seq.* ("PHRA"). To remedy Defendant's unlawful acts, Plaintiff seeks economic damages, compensatory damages for non-economic harm, punitive damages, attorneys' fees and costs, and all other relief that the Court deems appropriate.

### II.   PARTIES

1.     Plaintiff is an adult female and a citizen of the State of Maryland, residing in New Haven, CT.

2.     Defendant is an institution of higher education organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business in Philadelphia, PA.

3.     At all relevant times, Defendant operated MindCORE (Center for Outreach, Research and Education) at the School of Arts and Sciences at the University of Pennsylvania.

4. At all relevant times, Defendant acted by and through its authorized agents, servants and employees, acting within the scope and course of their employment and in furtherance of Defendant's mission, business, and affairs.

5. At all relevant times, Defendant was and acted as an "employer" within the meaning of and as defined by the ADA and the PHRA.

6. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of and as defined by the ADA and the PHRA.

## III.   JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's claims arising under the ADA pursuant to 28 U.S.C. §1331.

8. This Court has supplemental jurisdiction over Plaintiff's claims arising under the PHRA pursuant to 28 U.S.C. §1367(a).

9. This Court also has jurisdiction over all of Plaintiff's claims pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the Defendant resides here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here.

## IV.   COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS

11. All administrative requirements and conditions precedent to the filing of this action have been fulfilled by Plaintiff.

12. On or about May 2, 2024, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), in which she complained of the acts and practices of discrimination and retaliation alleged herein.

13. Plaintiff's Charge of Discrimination ("EEOC Charge") was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") on or about May 2, 2024.

14. On October 7, 2024, the EEOC issued to Plaintiff a "Determination and Notice of Rights" (the "EEOC Notice"), informing Plaintiff that it would not proceed further with its investigation. A true and correct copy of the EEOC Notice is attached hereto as Exhibit "A".

15. The EEOC Notice further informed Plaintiff that she was required to file a lawsuit against Defendant pursuant to the ADA within 90 days of her receipt of the EEOC Notice. *See* Exhibit "A".

16. Because Plaintiff is filing this action within 90 days of her receipt of the EEOC Notice, the action is timely under the ADA.

**V.     SUMMARY OF FACTS**

17. Plaintiff is a diagnosed diabetic whose disability is protected under the ADA and PHRA.

18. On or about October 2023, Plaintiff received a written offer of employment from Defendant for the role of "Director C, Research" with the MindCORE (Center for Outreach, Research and Education) at the School of Arts and Sciences at the University of Pennsylvania ("Offer Letter").

19. Plaintiff was recommended for the position by several individuals on Defendant's staff, including Dr. Ravinder Reddy.

3

20. Pursuant to the Offer Letter, Plaintiff was to begin employment with Defendant on January 1, 2024, and receive an annual salary of $108,000 and a relocation bonus of up to $20,000.

21. On or about October 25, 2023, Plaintiff participated in a call with Dr. Joseph Kable, during which Plaintiff disclosed her disability. Plaintiff specifically referenced to Dr. Kable having diabetes and needing the use of a Dexcom Continuous Glucose Monitoring System ("CGM System") that could be damaged if she entered an MRI scanning room ("Magnet Room").

22. During this call with Dr. Kable, Plaintiff requested the reasonable accommodation that she not be required to enter the Magnet Room.

23. This reasonable request was not an impediment for Defendant because the scanner would be used by others, including graduate students, research assistants and/or certified MRI technicians, and Defendant intended to hire a second staffer to perform such functions.

24. Defendant had previously accommodated Plaintiff regarding this very issue when she was a student at the University of Pennsylvania.

25. Nevertheless, or about November 1, 2023, Dr. Kable informed Plaintiff that if she was unwilling to remove her medical device, that "this is the end of the road."

26. Plaintiff objected to Dr. Kable and explained that her disability would not impact her job duties because the position did not require her to be in the Magnet Room.

27. Plaintiff also explained that Defendant had previously provided an accommodation for her disability when she was a student at the University of Pennsylvania, performing similar work.

28. Despite Plaintiff's request for a reasonable accommodation, and the requested accommodation being objectively reasonable and consistent with past practice, Defendant refused to provide the accommodation and/or to engage in an interactive process with Plaintiff.

29. On or about November 6, 2023, Dr. Kable sent an email to Plaintiff that falsely claimed Plaintiff was "unable to commit to the daily responsibilities of the position" and that Defendant would consider Plaintiff's application "withdrawn."

30. On or about November 6, 2023, Defendant unilaterally rescinded Plaintiff's Offer Letter.

31. The Director role sought by Plaintiff did not require that Plaintiff (or anyone in that role) enter the Magnet Room, as such a requirement was not necessary or related to the skills and requirements of the job.

32. There was no legitimate business reason in making entry into the Magnet Room a job requirement for plaintiff given that a graduate student, assistant, or a second staffer could enter the Magnet Room in lieu of Plaintiff.

33. Thus, presence in the Magnet Room was not a necessary job requirement to perform the basic functions of the Director role.

34. Defendant not only failed to offer Plaintiff the reasonable accommodation requested, or any accommodation, but it also failed to engage in an interactive process of communication with Plaintiff in an attempt to find an accommodation which would address the limitations of her disability.

35. Defendant simply refused to offer Plaintiff an accommodation of any kind and discriminated against Plaintiff, causing her harm, including the loss of employment.

**COUNT I**
**ADA – FAILURE TO ACCOMMODATE AND DISCRIMINATORY TERMINATION**

5

36. Plaintiff incorporates by reference thereto all of the allegations in the above paragraphs as if same were set forth fully and at length herein.

37. At all relevant times, Plaintiff had a "disability" within the meaning of the ADA.

38. At all relevant times, Defendant and its managers were aware of Plaintiff's disability.

39. At all relevant times, Plaintiff was a "qualified individual" under the ADA.

40. The reasonable accommodation needed by Plaintiff for her disability was to not have to enter the Magnet Room or other rooms with MRI scanners.

41. Defendant failed to provide Plaintiff with reasonable accommodation of any kind despite having done so in the past.

42. Plaintiff's requested accommodation would not have impose undue hardship on Defendant.

43. Defendant's failure to provide the reasonable accommodation caused Plaintiff's offer of employment to be rescinded because of her disability.

44. Defendant's failure to provide the reasonable accommodation constituted discrimination against Plaintiff on the basis of her disability in violation of the ADA.

45. As a direct and proximate result of Defendant's failure to provide the reasonable accommodation to Plaintiff in violation of the ADA, Plaintiff suffered and will suffer economic harm in the form of lost wages, loss of salary, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay from the time of termination of her employment until the date time of trial.

46. As a further result of Defendant's failure to provide the reasonable accommodation in violation of the ADA and that effect it has had and will have on Plaintiff,

Plaintiff is entitled to an award of compensatory damages for past and future pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of self-esteem, and loss of enjoyment of life.

47. Defendant's failure to provide the reasonable accommodation in violation of the ADA was implemented by one or more management officials of Defendant, acting with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

48. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the ADA, Plaintiff is entitled to a declaratory judgment that Defendant violated Plaintiff's rights under the ADA, as well as equitable relief enjoining the Defendant from committing further violations of the ADA.

49. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the ADA, Plaintiff is entitled to prejudgment interest on any award of damages that she recovers.

50. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the ADA, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff, Abigail Cember, respectfully requests that this Court enter judgment in her favor and against Defendant University of Pennsylvania in an amount in excess of $75,000, for compensatory and punitive damages, plus interest and costs of suit, attorney's fees, and other and further relief as this Court deems just and appropriate.

## COUNT II
## PHRA – FAILURE TO ACCOMMODATE AND DISCRIMINATORY TERMINATION

51. Plaintiff incorporates by reference thereto all of allegations in the above paragraphs as if same were set forth fully and at length herein.

52. At all relevant times, Plaintiff had a "disability" within the meaning of the PHRA.

53. At all relevant times, Defendant and its managers were aware of Plaintiff's disability.

54. At all relevant times, Plaintiff was a "qualified individual" under the PHRA.

55. The reasonable accommodation needed by Plaintiff for her disability was to not have to enter the Magnet Room or other rooms with MRI scanners.

56. Defendant failed to provide Plaintiff with reasonable accommodation of any kind despite having done so in the past.

57. Plaintiff's requested accommodation would not have imposed undue hardship on Defendant.

58. Defendant's failure to provide the reasonable accommodation caused Plaintiff's offer of employment to be rescinded because of her disability.

59. Defendant's failure to provide the reasonable accommodation constituted discrimination against Plaintiff on the basis of her disability in violation of the PHRA.

60. As a direct and proximate result of Defendant's failure to provide the reasonable accommodation to Plaintiff in violation of the PHRA, Plaintiff suffered and will suffer economic harm in the form of lost wages, loss of salary, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay from the time of termination of her employment until the time of trial.

61. As a further result of Defendant's failure to provide the reasonable accommodation in violation of the PHRA and that effect it has had and will have on Plaintiff, Plaintiff is entitled to an award of compensatory damages for past and future pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of self-esteem, and loss of enjoyment of life.

62. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the PHRA, Plaintiff is entitled to declaratory judgment that Defendant violated Plaintiff's rights under the PHRA, as well as equitable relief enjoining the Defendant from committing further violations of the PHRA.

63. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the PHRA, Plaintiff is entitled to prejudgment interest on any award of damages that she recovers.

64. As an additional remedy for Defendant's failure to provide the reasonable accommodation in violation of the PHRA, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff, Abigail Cember, respectfully requests that this Court enter judgment in her favor and against Defendant University of Pennsylvania in an amount in excess of $75,000, for compensatory damages, plus interest and costs of suit, attorney's fees and any other and further relief as this Court deems just and appropriate.

## COUNT III
## ADA – FAILURE TO ENGAGE IN INTERACTIVE PROCESS

65. Plaintiff incorporates by reference thereto all of the allegations in the above paragraphs as if same were set forth fully and at length herein.

66. At all relevant times, Plaintiff had a "disability" within the meaning of the ADA.

9

67. At all relevant times, Defendant and its managers were aware of Plaintiff's disability.

68. At all relevant times, Plaintiff was a "qualified individual" under the ADA.

69. Defendant did not specify that entering the Magnet Room and/or any other MRI scanning rooms was an essential function of the "Director C, Research" position and had no legitimate business reason to make this a job requirement for Plaintiff.

70. Plaintiff requested a reasonable accommodation of not entering the Magnet Room and/or other MRI scanning rooms.

71. After learning of Plaintiff's need for the reasonable accommodation, Defendant was obligated to engage in an interactive process under the ADA.

72. Despite Plaintiff's request for the reasonable accommodation, and despite being granted the reasonable accommodation by Defendant in the past, Defendant failed to provide the reasonable accommodation and failed to engage in an interactive process with Plaintiff.

73. Defendant's failure to engage in an interactive process prevented Plaintiff from receiving the reasonable accommodation.

74. Defendant's failure to engage in an interactive process caused Plaintiff's employment to be terminated because of her disability.

75. Defendant's failure to engage in an interactive process constituted discrimination based on Plaintiff's disability in violation of the ADA.

76. As a direct and proximate result of Defendant's failure to engage in an interactive process in violation of the ADA, Plaintiff suffered and will suffer economic harm in the form of lost wages, loss of salary, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay from the time of termination of her employment until the time of trial.

77. As a further result of Defendant's failure to engage in an interactive process in violation of the ADA and that effect it has had and will have on Plaintiff, Plaintiff is entitled to an award of compensatory damages for past and future pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of self-esteem, and loss of enjoyment of life.

78. Defendant's failure to engage in an interactive process in violation of the ADA was implemented by one or more management officials of Defendant, acting with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

79. As an additional remedy for failure to engage in an interactive process in violation of the ADA, Plaintiff is entitled to declaratory judgment that Defendant violated Plaintiff's rights under the ADA, as well as equitable relief enjoining the Defendant from committing further violations of the ADA.

80. As an additional remedy for failure to engage in an interactive process in violation of the ADA, Plaintiff is entitled to prejudgment interest on any award of damages that she recovers.

81. As an additional remedy for Defendant's failure to engage in an interactive process in violation of the ADA, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff, Abigail Cember, respectfully requests that this Court enter judgment in her favor and against Defendant University of Pennsylvania in an amount in excess of $75,000, for compensatory and punitive damages, plus interest and costs of suit, attorney's fees, along with any other and further relief as this Court deems just and appropriate.

## COUNT IV
## PHRA – FAILURE TO ENGAGE IN INTERACTIVE PROCESS

82. Plaintiff incorporates by reference thereto all of the allegations in the above paragraphs as if same were set forth fully and at length herein.

83. At all relevant times, Plaintiff had a "disability" within the meaning of the PHRA.

84. At all relevant times, Defendant and its managers were aware of Plaintiff's disability.

85. At all relevant times, Plaintiff was a "qualified individual" under the PHRA.

86. Defendant did not specify that entering the Magnet Room and/or other MRI scanning rooms was an essential function of the "Director C, Research" position and had no legitimate business reason to make this a job requirement for Plaintiff.

87. Plaintiff requested a reasonable accommodation of not entering the Magnet Room and/or other MRI scanning rooms.

88. After learning of Plaintiff's need for the reasonable accommodation, Defendant was obligated to engage in an interactive process.

89. Despite Plaintiff's request for the reasonable accommodation, and despite being granted reasonable accommodation by Defendant in the past, Defendant failed to provide reasonable accommodation and failed to engage in an interactive process with Plaintiff.

90. Defendant's failure to engage in an interactive process prevented Plaintiff from receiving the reasonable accommodation.

91. Defendant's failure to engage in an interactive process caused Plaintiff's employment to be terminated because of her disability.

92. Defendant's failure to engage in an interactive process constituted discrimination based on Plaintiff's disability in violation of the PHRA.

93. As a direct and proximate result of Defendant's failure to engage in an interactive process in violation of the PHRA, Plaintiff suffered and will suffer economic harm in the form of lost wages, loss of salary, and loss of the value of employee benefits, thereby entitling Plaintiff to an award of back pay from the time of termination of her employment until the time of trial.

94. As a further result of Defendant's failure to engage in an interactive process in violation of the PHRA and that effect it has had and will have on Plaintiff, Plaintiff is entitled to an award of compensatory damages for past and future pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, loss of self-esteem, and loss of enjoyment of life.

95. Defendant's failure to engage in an interactive process in violation of the PHRA was implemented by one or more management officials of Defendant, acting with malice and/or reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

96. As an additional remedy for failure to engage in an interactive process in violation of the PHRA, Plaintiff is entitled to prejudgment interest on any award of damages that she recovers.

97. As an additional remedy for Defendant's failure to engage in an interactive process in violation of the PHRA, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff, Abigail Cember, respectfully requests that this Court enter judgment in her favor and against Defendant University of Pennsylvania in an amount in excess of $75,000, for compensatory damages, plus interest and costs of suit, attorney's fees, along with any other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a jury trial is available.

                                    **SIDKOFF, PINCUS & GREEN, P.C.**

                                    By: */s/ Casey Green*
                                          Casey Green, Esquire
                                          Rachel Dennis, Esquire
                                          SIDKOFF, PINCUS & GREEN, P.C.
                                          1101 Market Street, Suite 2700
                                          Philadelphia, PA 19107
                                          Tel: (215) 574-0600
                                          cg@sidkoffpincusgreen.com
                                          rdennis@sidkoffpincusgreen.com

                                          Attorneys for Plaintiff, Abigail Cember

Date: <u>December 31, 2024</u>

# Exhibit A

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/07/2024

**To:** Dr. Abigail Cember
412 Boston Ave
Takoma Park, MD 20912

Charge No: 530-2024-05723

| EEOC Representative and telephone number: | UNIQUE AUSTIN<br>Legal Unit<br>(267) 589-9707 |
|---|---|

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
10/07/2024

Karen McDonough
Deputy Director

**Cc:**
Helen Logan
University of Pennsylvania
2929 Walnut Street
Philadelphia, PA 19104

Linda P Esposito
University of Pennsylvania
2929 Walnut Street, Suite 400
Philadelphia, PA 19104

Rachel Dennis Esq.
SIDKOFF, PINCUS & GREEN, P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2024-05723 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Jamie Williamson, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2024-05723 to the District Director at Jamie Williamson, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.